UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES CASTRO, | No. C 14-465 SI (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| E. SPEARMAN, warden, | |
| Respondent. | |

## INTRODUCTION

Andres Castro filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision that resulted in a forfeiture of time credits. The court reviewed the petition and found cognizable a claim that Castro's due process rights were violated in that the disciplinary decision was not supported by sufficient evidence. Respondent has filed an answer and Castro has filed a traverse. For the reasons explained below, the petition will be denied.

## BACKGROUND

A CDC-115 rule violation report was written by correctional officer ("C/O") Meade charging Castro with "masturbation without exposure" on May 5, 2012 Docket # 4-1 at 19. C/O Meade wrote that, at approximately 11:15 a.m. on May 4, 2012, while she was assigned as a central tower officer and observing yard recall (i.e., the time when inmates are returned to their housing units):

> I observed Inmate CASTRO, P-68358, EW-314L, standing outside the inmate phone line. Inmate CASTRO was standing away from the other inmates waiting near the fence. As the inmate[s] on the yard were forming a line for yard recall, a large group was formed that Inmate CASTRO took advantage of to shield his action from the view of the yard officers. Inmate CASTRO positioned himself in front of the phone lines and then looked up towards me.  He then grabbed his genitals with his left hand and began to masturbating over his pants, on what appeared to be an erect penis. Inmate CASTRO was squeezing and pulling in a repetitive and lateral movement to his genitals on the outside of his pants. I believe Inmate CASTRO's intention was for me to observe him masturbating. I conducted (sic) the yard officer via institutional radio to identify Inmate CASTRO by using his state I.D. At 1345 hours, I then contacted Sergeant Ramirez.

*Id.*

An investigative employee was appointed for the CDC-115. The investigative employee interviewed Castro twice; Castro told the investigator that he had not seen the reporting officer, he "'never look[ed] up at towers,'" did not make a gesture towards or over his genitals, and did not grab his genitals but instead had "'just put [his] hand on the side of [his] pants.'" *Id.* at 22-23. The investigative employee interviewed inmate Hurtado, who said he "'was not with [Castro] on the yard.'" *Id.* at 23. The investigative employee also interviewed inmate Torres, who stated that he was with Castro but had not seen him doing anything before going into the building. *Id.* The investigative employee also took a statement from C/O Meade, who had reported the offense. C/O Meade stated that "'Castro was fondling himself at yard recall while looking up at me in the tower. Then I had yard staff identify him for me by using his State Identification Card.'" *Id.*

A disciplinary hearing was held on May 31, 2012, at which Castro pled not guilty. Docket # 4-1 at 20. According to the hearing officer's report, Castro stated: "'I did not do anything. I was at the table trying to sell greeting cards when they announced yard recall. I took approximately five to ten minutes to get my cards together. Then I got in line for yard-recall. It took a lot longer that day. Inmate HURTADO was with me in line waiting to go in. He and I was (sic) playing around, then we all went in.'" *Id.* The hearing officer also had before him the investigative employee's reports of the statements from the several persons interviewed.

The hearing officer found Castro guilty of "masturbation without exposure," based on the description of the offense in the rule violation report, the reporting employee's statement to the investigative employee, and the mental health assessment form which documented that there

2

1  were no mental health factors that contributed to the misconduct or precluded an understanding
2  of the disciplinary process. *Id.* at 20-21.[1]  The discipline imposed on Castro for this offense was
3  (a) a loss of 60 days of time credits and (b) a loss of all privileges for 180 days because it was
4  his second offense. *Id.* at 19.

5  Castro filed unsuccessful inmate appeals about the disciplinary decision.  He also filed
6  unsuccessful state court habeas petitions challenging the disciplinary decision.

7  Castro then filed this action.  Respondent has filed an answer and Castro has filed a
8  traverse.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief brought under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the petition concerns the execution of a sentence for a prisoner incarcerated in Monterey County, California, which is within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c).  State court remedies have been

---

[1] The offense was listed on the rule violation report as a violation of section 3007 of Title 15 of the California Code of Regulations.  Section 3007 states: "Inmates may not participate in illegal sexual acts.  Inmates are specifically excluded in laws which remove legal restraints from acts between consenting adults.  Inmates must avoid deliberately placing themselves in situations and behaving in a manner which is designed to encourage illegal sexual acts."  Another section in the regulations provides: "Sexual Disorderly Conduct means every person who touches, without exposing, his or her genitals, buttocks or breasts in a manner that demonstrates it is for the purpose of sexual arousal, gratification, annoyance, or offense, and that any reasonable person would consider this conduct offensive."  15 Cal. Code Regs. § 3000.  A finding of guilt on a charge of sexual disorderly conduct can result in discipline including loss of privileges (§ 3315(f)(5)(K)) and 31-60 days' loss of credits (§ 3323(g)(7)).  Castro did not contend here or in his state court habeas petitions that section 3000 did not cover his conduct or that the citation of that section in some way negated the validity of the disciplinary decision.

3

exhausted for the one claim in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 is the proper jurisdictional basis for a habeas petition attacking the execution of a sentence by a petitioner in custody pursuant to the judgment of a state court. *See White v. Lambert*, 370 F.3d 1002, 1004 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546, 554 (9th Cir. 2010).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A

4

federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence. *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). The Due Process Clause only requires that prisoners be afforded those procedures mandated by *Wolff* and its progeny; it does not require that a prison comply with its own, more generous procedures. *See Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *overruled on other grounds by Sandin*, 515 U.S. 472.

The revocation of good-time credits does not comport with the minimum requirements of procedural due process in *Wolff* unless the findings of the prison disciplinary decision-maker are supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985). There must be "some evidence" from which the conclusion of the decision-maker could be deduced. *Id.* at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. *Id.* The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary decision-maker. *Id.* This standard is considerably lower than that applicable in criminal trials. *Id.* at 456.

Here, there was sufficient evidence to support the disciplinary decision. The evidence included: (a) C/O Meade's written description in the CDC-115 that she had observed Castro engaged in activity that looked to her like he was masturbating; (b) C/O Meade's statement to the investigative employee that she observed Castro fondling himself; and (c) the statement of the mental health provider that there was no mental health concern that contributed to the

misconduct. This is enough to satisfy the extremely deferential "some evidence" standard.

Castro makes various arguments in an effort to undermine the disciplinary decision. Most notably, he argues that the CDC-115 shows that C/O Meade waited two hours to determine his identity. Docket # 1 at 11. This is not a fair reading of the CDC-115: C/O Meade does not state therein when she contacted the yard officer to learn Castro's identity, and instead only states that she contacted sergeant Ramirez two-and-a-half hours after the incident. *See* Docket # 4-1 at 19. Castro also tries to chip away at the credibility of C/O Meade's report by arguing that his penis was too small for C/O Meade to have been able to see from her vantage point in the tower, that he was right-handed, that no semen was found in his pants, and that an inmate wouldn't masturbate on the yard because he would be assaulted by other inmates if observed doing so. *See* Docket # 1 at 12; Docket # 5 at 4-5. These arguments do not demonstrate that there was not some evidence to support the disciplinary decision. Even if Castro's evidence and arguments had been presented at the disciplinary hearing and could have led the hearing officer to reach a different conclusion, this court is not compelled to set aside the decision reached by the hearing officer. The fact that an inmate offers a defense does not mean that the hearing officer must accept it as true. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. at 457. The evidence supporting the disciplinary decision was constitutionally sufficient and reliable. Castro's right to due process was not violated by prison officials' decision to find him guilty.

The state court's rejection of his claim was not contrary to or an unreasonable application of clearly established federal law. As the last reasoned decision, the Monterey County Superior Court's decision is the decision to which § 2254(d) is applied. That court correctly identified the "some evidence" legal standard from *Superintendent v. Hill*, and reasonably applied it. *See* Docket # 4-5 at 33-35. Castro is not entitled to the writ of habeas corpus.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

6

**CONCLUSION**

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

Dated: December 15, 2014

_____
SUSAN ILLSTON
United States District Judge